IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THOMAS SMITH, : | CIVIL ACTION |
| Plaintiff, : |  |
| : |  |
| v. : | No. 07-4317 |
| : |  |
| CITY OF ALLENTOWN and : |  |
| ED PAWLOWSKI, : |  |
| Defendants. : |  |
| : |  |

**MEMORANDUM AND ORDER**

**Goldberg, J.**                                                                                                                **March 9, 2009**

      This case arises from Plaintiff, Thomas Smith's, allegations that Defendants, the City of Allentown (hereinafter "City") and the Mayor, Ed Pawlowski, discharged him from his employment in violation of the Age Discrimination in Employment Act (hereinafter "ADEA"). 29 U.S.C. § 631 et seq. Plaintiff also claims that he was wrongfully discharged as a result of political discrimination in violation of his First Amendment rights pursuant to 42 U.S.C. § 1983 (hereinafter "Section 1983").

      Before me is Defendants' Motion for Summary Judgment which seeks dismissal of the age discrimination claim based upon Plaintiff's alleged failure to produce sufficient evidence establishing that his discharge was pretextual. Defendants also seek dismissal of the Section 1983 action and assert that Plaintiff has failed to make out a prima facie case of political discrimination. For the reasons that follow, I grant Defendants' motion.

1

I. BACKGROUND

Plaintiff was employed on a full-time basis with the Defendant, City of Allentown, from October 1979, until October 19, 2007. (Defendants' Exhibit J, September 20, 200[6] correspondence). In 2002, after holding several positions with the City, Plaintiff was promoted to Superintendent of the Recreation Department by William Heydt, who was Mayor of Allentown at the time. As Superintendent of Recreation, Plaintiff was responsible for overseeing seven (7) full-time employees as well as one hundred fifty (150) to two hundred (200) part-time employees. (Smith Depo., pp. 40-47)

In 2002, Roy Afflerbach succeeded Heydt as mayor, and proposed eliminating the Recreation Department due to budget constraints. Plaintiff approached Afflerbach with a proposal to save the department and, after discussion, Afflerbach agreed to retain it with reduced staff and funding. In early 2002, Afflerbach appointed Defendant, Ed Pawlowski, as Director of Community and Economic Development, which supervised Plaintiff and the Recreation Department. (Pawlowski Depo., pp. 7, 11; Smith Depo., pp. 47-49).

On April 8, 2002, Pawlowski sent Plaintiff a memorandum outlining changes he expected to be implemented in the Recreation Department, including weekly meetings with the City golf course staff, updates on managing the golf course, updates on an event called Sportsfest[1] and the development of new recreation programs in several of the City's neighborhoods. (Defendants' Exhibit C, April 8, 2002, memorandum). On June 29, 2005, Plaintiff received a performance

---

[1] Sportsfest is a weekend where the City hosted numerous professional and amateur sporting events.

2

improvement plan from Lauren Giguere, who succeeded Pawlowksi as Director of Community and Economic Development. This plan added additional changes that were to occur in the Recreation Department. (Defendants' Exhibit D, June 29, 2005, verbal warning).

In 2005, Pawlowski ran as the Democratic candidate for mayor, opposing Republican and former Mayor William Heydt, who, as set forth supra, originally appointed Plaintiff to the position of Superintendent of Recreation. During both the primary and general election campaigns, Plaintiff placed signs in his yard promoting Heydt. While both Pawlowski and Heydt campaigned in Plaintiff's neighborhood, there is no evidence of record that either were in close vicinity to his house to observe these signs. (Smith Depo., pp. 15, 21-24).

In the summer before the November 2005 mayoral election, a James Spang approached Plaintiff during the 2005 Sportsfest, which Plaintiff had organized. Spang was a Democratic state committeeman, a supporter of Pawlowski and Plaintiff's friend. Spang advised Plaintiff that he believed that the Sportsfest event featured and favored Heydt to the exclusion of Pawlowski. Spang emphasized that he did not want Plaintiff to be thought of as using his public position as Recreation Director to support a particular political candidate. Plaintiff alleges that during this conversation Spang also told him that he had been advised that Pawlowski viewed Plaintiff as a "political enemy." In deposition, Spang denied making this statement. (Spang Depo., pp. 8, 19, 24-25, 37-49; Smith Depo., p. 26).

Pawlowski won the mayoral election in November 2005, and in May 2006, hired Francis Dougherty as Director of Community and Economic Development. During his first month as Director, Dougherty conducted a review of Plaintiff's work and concluded that he had failed to meet the goals set forth by the prior Director of Community Development. Specifically, Dougherty

concluded that Plaintiff had, <u>inter alia</u>, mismanaged the municipal golf course, not implemented new programs directed at inner city, minority youth, mismanaged city pool repair and not controlled the Halloween parade. Based on his review, Dougherty recommended to Pawlowski that Plaintiff be required to resign or retire because he lacked "the skill sets" necessary to perform his job. Pawlowski approved this recommendation. (Pawlowski Depo., pp. 8-9, 27, 36; Dougherty Depo., pp. 11, 22-23, 29, 33-42, 51).

Allentown's Human Resources Director, Sonya Stephens, was not consulted in this review process or the ultimate employment decision. Stephens testified at deposition that she believed Plaintiff's personnel file did not support his mandatory resignation/retirement. Nevertheless, on July 24, 2006, Dougherty briefly met with Plaintiff and advised that he had the option of resigning or retiring for failing to address the concerns set forth in prior performance improvement plans. Plaintiff claims that Dougherty referenced both his birthday and anniversary date with the City during the termination meeting. Specifically, Plaintiff claims Dougherty stated, "I see you have a significant birthday [55] coming up and an anniversary date. And the mayor would like your resignation by your birthday, no later than your anniversary date." When asked at deposition whether he had any information that Pawlowski had, in any way, considered his age in deciding to ask for his resignation, Plaintiff responded, "No, I do not." (Stephens Depo., pp. 26-30; Dougherty Depo., pp. 44, 49, 57; Smith Depo., pp. 192, 208).

On July 27, 2006, Plaintiff wrote to Pawlowski requesting that he reconsider his decision. (Defendants' Exhibit I, July 27, 2006, correspondence). Plaintiff outlined the various activities and improvements he had successfully implemented and set forth instances where City employees had prevented him from satisfactorily meeting stated goals. <u>Id</u>. Plaintiff also noted that he heard through

the grapevine that Pawlowski viewed him as a political enemy and that "I've been told that you believe I worked against you in the last election...." Id. On August 8, 2006, Pawlowski sent Plaintiff a letter stating he never viewed him as a political enemy and that he had not changed his decision regarding Plaintiff's resignation/retirement. (Plaintiff's Exhibit 6, August 8, 2006, correspondence). At deposition, Pawlowski denied knowing Plaintiff's political affiliation. (Pawlowski Depo., pp. 37-38).

On September 20, 2006, Plaintiff wrote to Human Resources advising that his retirement from the City of Allentown would be effective October 19, 2006. (Defendants' Exhibit J, September 20, 200[6] correspondence). This retirement date marked Plaintiff's twenty-seventh (27th) anniversary with the City, which Plaintiff acknowledged allowed him to maximize his retirement benefits. Plaintiff, who was fifty-five (55) years old at the time of his retirement, was replaced by Carl Bruno, who was thirty-six (36) years old. Bruno resigned six (6) months later. Kevin Easterling, who was forty-one (41) years old at the time and a long time Democratic supporter, was then appointed as Superintendent of Recreation. (Smith Depo., pp. 200, 207; Bruno Depo., pp. 7, 29; Easterling Depo., pp. 6, 27-28, 32-33, 38-44).

## II. LEGAL ANALYSIS

### A. *Summary Judgment Standard*

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." There is a dispute over a material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" only if it might

affect the outcome of the case under governing law.  Id.

The court must consider the evidence and all reasonable inferences drawn therefrom in favor of the non-moving party.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)).  Disagreements over what inferences may be drawn from the facts, preclude summary judgment.  Ideal Dairy Farms, Inc. v. John Labatt, Ltd., 90 F.3d 737, 743 (3d Cir. 1996).  If there is a conflict in evidence presented by both parties, the court must accept the allegations of the non-moving party as true.  Anderson, 477 U.S. at 255.

The moving party bears the burden of showing an absence of factual issues where the non-moving party bears the burden of proof at trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Morgan v. Rossi, 1998 WL 175604 (E.D.Pa. 1998).  Once the moving party has met its burden, the non-moving party must then establish evidence sufficient to prove each element of his case.  J.F. Feeser, Inc. v. Serv-a-Portion, Inc., 909 F.2d 1524, 1531 (3d. Cir. 1990) (citing Celotex, 477 U.S. at 323).

**B.  *Age Discrimination Claim***

Plaintiff first claims that he was wrongfully terminated due to his age, in violation of the ADEA.  The elements required to prove a claim of age discrimination under the ADEA are: (1) the plaintiff was over the age of forty (40); (2) the plaintiff suffered an adverse employment action, such as discharge; (3) the plaintiff was qualified for the job; and (4) the plaintiff was replaced with someone sufficiently younger so as to reasonably permit the inference of age discrimination.  Potence v. Hazleton Area Sch. Dist., 357 F.3d 366, 370 (3d Cir. 2004).

The Third Circuit has adopted a "slightly modified version" of the McDonnell Douglas

burden shifting framework[2] and applied it to ADEA discrimination cases where only circumstantial evidence of age discrimination has been alleged.  McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Williams v. St. Joan of Arc Church, 226 Fed.Appx. 180, 183 (3d Cir. 2007).  Thus, once the plaintiff has made out a prima facie case of age discrimination, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action.  McDonnell Douglas Corp., 411 U.S. at 802.  The burden then shifts back to the plaintiff to adduce sufficient evidence to establish that the employer's legitimate reason was a pretext for the employment discrimination.  Fuentes v. Perskie, 32 F.3d 759, 762 (3d Cir. 1994).

Sufficient evidence of pretext is evidence which: "1) casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication; or 2) allows the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action."  Id.  In short, the Plaintiff "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employee's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them 'unworthy of credence.'"  Id. at 764; Ezold v.Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 531 (3d Cir. 1992).

Here, Defendants do not dispute that Plaintiff can establish a prima facie case of age discrimination.  Likewise, Plaintiff concedes that Defendants have alleged a legitimate, non-discriminatory reason for Plaintiff's termination, that is, substandard job performance.  Thus, the only issue before us is to determine whether or not there is a genuine issue of material fact as to

---

[2] This burden-shifting analysis was first applied to employment discrimination claims under Title VII to the Civil Rights Act of 1964.  McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

whether Defendants' reason for termination was a pretext for employment discrimination.

The sole evidence of record of a pretextual termination is a comment allegedly made by Dougherty during Plaintiff's termination meeting, wherein he referenced Plaintiff's upcoming birthday and anniversary date with the City as a timeline for when Plaintiff's resignation was expected. Even when viewed in a light most favorable to Plaintiff, Dougherty's statement refers only to a deadline for when Plaintiff's employment would end and makes no reference to the termination being tied to, or connected with, Plaintiff's age. This statement does not cast significant doubt on Defendants' non-discriminatory reason for the termination nor does it demonstrate "weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in" Defendants' proffered legitimate reasons for termination. Id. (Smith Depo., p. 192).

The Second Circuit case of Fagan v. New York State Elec. & Gas Corp., 186 F.3d 127 (2d Cir. 1999), supports our conclusion. In Fagan, plaintiff argued that defendants' CEO's expression of pleasure in reducing the number of officers "who were fifty-five (55) years of age or older" was sufficient evidence to create a factual issue on pretext. While the court's ruling affirming summary judgment was primarily premised upon the legitimacy of the defendant company's early retirement plan, the court noted that nothing in the CEO's statement "suggests animus against older employees." Id. at 133.

Here, like Fagan, Plaintiff was allowed to remain employed with the City until a certain date, (his 27th anniversary), and acknowledged that this allowed him to maximize his retirement benefits with the City. (Smith Depo., p. 207). Although Plaintiff's termination was not, as in Fagan, tied to an early retirement plan, nothing in Dougherty's statement even remotely suggests animus against older employees. At best Dougherty's comments were references to a timetable wherein Plaintiff's

resignation was expected. Simply because one of those dates was Plaintiff's birthday does not create a factual issue on pretext for a jury to resolve. Compare, Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133 (2000) (comments that plaintiff was "old enough to have come over on the Mayflower" coupled with the lack of evidence supporting the employer's proffered legitimate reason was sufficient to survive summary judgment on the issue of pretext); Potence, 357 F.3d at 369-71 (proclamation by employer not to hire "more old plumbers," presents an issue of material fact on pretext).

In addition to relying on Dougherty's comment regarding Plaintiff's birthday and employment anniversary date as deadlines for resignation, Plaintiff also argues that Sonya Stephens's (Director of Human Resources) observation that Plaintiff's termination was unwarranted demonstrates that Defendants' proffered legitimate reason was pretext. However, remarks by non-decisionmakers alone are insufficient to establish discriminatory intent. Walden v. Georgia-Pacific Corp., 126 F.3d 506, 521 (3d Cir. 1997). It is undisputed that Stephens was not involved in the termination process nor was she a decisionmaker. Even if Stephens had been involved in the termination decision, disagreements amongst decisionmakers do not evidence discrimination. Fuentes, 32 F.3d at 767.

Lastly, Plaintiff conceded in deposition that he had no evidence that Pawlowski considered his age in seeking his retirement/resignation. This admission is similar to the one in Skagen v. Sears, Roebuck & Co., 910 F.2d 1498 (7th Cir. 1990), where the court granted summary judgment in favor of the defendant employer on an ADEA claim. In Skagen, the plaintiff admitted in his statement of undisputed facts that he did not believe the adverse employment action was motivated by age. Id. at 1499. The trial court found that this admission "fatally wounded" plaintiff's ADEA claim, and

9

the appellate court affirmed. Id. Here, Plaintiff's admission that he had no evidence that Pawlowski considered his age in requesting his resignation, weighs heavily in favor of granting Defendants' motion. (Smith Depo., pp. 200, 202, 208).

In short, Dougherty's comments and Stephens' irrelevant observations about the propriety of Plaintiff's termination do not create a factual dispute on the issue of pretext. This is especially the case when viewed in conjunction with Plaintiff's acknowledgment that he had no evidence that Pawlowski ever considered his age. "In order to survive summary judgment, the plaintiff must show through admissible evidence that the employer's articulated reason was not merely wrong, but that it was 'so plainly wrong that it cannot have been the employer's real reason.'" Rand v. Mannesmann Rexroth Corp., 2002 WL 550396 (E.D.Pa. 2002) (quoting Jones v. Sch. Dist. of Philadelphia, 198 F.3d 403, 413 (3d. Cir. 1999)) (internal quotations and citations omitted). As Plaintiff has failed to meet this burden, his ADEA claim is dismissed.

**C.** *Political Discrimination Claim*

Plaintiff also alleges that he was wrongfully terminated because of his political affiliation and free speech activities, in violation of 42 U.S.C. § 1983. This section states, in pertinent part:

> Every person, who under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. Under Section 1983, the Supreme Court has held that it is unconstitutional to take adverse employment action against non-policymaking or non-advisory employees based on their political affiliation. Branti v. Finkel, 445 U.S. 507, 514-15 (1980); Elrod v. Burns, 427 U.S. 347, 372-73 (1976). The Court reasoned that, "an employee's exercise of First Amendment rights

outweighs the government's interest in maintaining a system of political patronage." Stephens v. Kerrigan, 122 F.3d 171, 176 (3d Cir. 1997).

Claims of political discrimination fall within the Section 1983 framework, and the elements required to prove a claim of political discrimination are: (1) the plaintiff worked for a public agency in a position that did not require political affiliation; (2) the plaintiff engaged in constitutionally protected conduct; and (3) the constitutionally protected conduct was a substantial motivating factor in the government's adverse employment decision against plaintiff. Id.; see also; Pickering v. Bd. of Educ., 391 U.S. 563 (1968). In order to meet its burden of proof, plaintiff must prove by direct or circumstantial evidence that the defendant employer knew of his political affiliation. Ambrose v. Twp. of Robinson, 303 F.3d 488, 493 (3d Cir. 2002); Laskaris v. Thornburgh, 733 F.2d 260, 266 (3d Cir. 1984), cert. denied, 469 U.S. 886 (1984). Upon establishing a prima facie case based on the above factors, the burden then shifts to the employer to prove by a preponderance of the evidence that the same employment action would have been taken regardless of the employee's constitutional conduct. Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977); Stephens, 122 F.3d at 176.

In the case before us, Defendants argue that Plaintiff has not met his burden of proving a prima facie case of political discrimination, because there is no evidence of record that Pawlowski knew of Plaintiff's political affiliation or of his support for Heydt, Pawlowski's opponent. Plaintiff counters that he had placed "Heydt for Mayor" signs in his yard during the time when Pawlowski campaigned door-to-door in his neighborhood, and thus, a jury should be allowed to infer that Pawlowski observed the Heydt sign on his property, and understood that he was publicly endorsing Pawlowski's opponent. Plaintiff concedes, however, that he cannot establish that Pawlowski ever

11

visited his house during the campaign, nor can he directly refute Pawlowski's deposition testimony that he had no knowledge as to where Plaintiff lived. Plaintiff further acknowledged in deposition that he did not openly show his support for Heydt through his work with the City, nor did he possess any information establishing that Pawlowski was aware of whom he supported in the 2005 mayoral election. (Smith Depo., pp. 15, 22-24; Pawlowski Depo., pp. 18-20, 24-26).

The record before us is insufficient to establish a factual question as to whether Pawlowski was aware of who Plaintiff was supporting in the upcoming mayoral election. The fact that Pawlowski may have been in the vicinity of Plaintiff's house and, thus, could have observed a lawn sign supporting Heydt, is simply too speculative to create a reasonable inference from which a jury could conclude that Pawlowski knew of Plaintiff's political affiliation or his support for Heydt.

Lastly, Plaintiff points to his conversation with Spang, wherein Spang warned that the 2005 Sportsfest may be viewed as unfairly supporting Heydt, and Spang's statement that Pawlowksi viewed him as a "political enemy." Plaintiff argues that these statements create enough facts whereby a jury could conclude that Pawlowski was aware of Plaintiff's political affiliation. This argument is unpersuasive.

In deposition, Spang denied speaking to Pawlowski about Plaintiff's political affiliation. Thus, the only way that Plaintiff could establish Pawlowski's knowledge of his political affiliation would be for Plaintiff to testify about Spang's statements, which referenced Pawlowski's statements to Spang. Such testimony constitutes multi-layered hearsay which does not fall within any of the recognized exceptions to the hearsay rule. Because Spang has denied making any such statement, there is no other evidence from which a jury could find that Pawlowski had knowledge of Plaintiff's political affiliation or his support for Heydt. (Spang Depo., pp. 20-21).

In <u>Stephens v. Kerrigan</u>, 122 F.3d 171 (3d Cir. 1997), the court held that summary judgment was improperly granted in favor of the City of Allentown and its mayor because there was sufficient information from which a jury could have found that plaintiffs were terminated because of their political affiliation. <u>Id</u>. at 180. There, the plaintiff police officers testified that they were politically vocal in their opposition to defendants' administration on several occasions at Fraternal Order of Police meetings. <u>Id</u>. at 178. The court found that there was a sufficient factual question as to whether defendants knew of this opposition because of a clear "information pipeline" between defendants and their supporters who attended the Fraternal Order of Police meetings regarding plaintiffs' political activity. <u>Id</u>. Thus, the court found sufficient circumstantial evidence existed of defendants' knowledge of plaintiffs' political affiliation. <u>Id</u>. at 177-78.

Here, there are no facts of record to establish an "information pipeline" or similar connection between Plaintiff's political affiliation and knowledge of that affiliation by Pawlowski. Similarly, there are no facts of record which contradict Pawlowski's insistence that he had no knowledge of Plaintiff's political affiliation. Consequently, Plaintiff has not met his <u>prima facie</u> case of political discrimination, and summary judgment on this count is warranted.

**D. *Official Immunity***

As summary judgment is appropriate for Defendants, the issue of Pawlowski's official immunity need not be addressed.

Our Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THOMAS SMITH, | : | CIVIL ACTION |
|       Plaintiff, | : | |
| | : | |
|     v. | : | No. 07-4317 |
| | : | |
| CITY OF ALLENTOWN and ED PAWLOWSKI, | : | |
|       Defendants. | : | |

## ORDER

**AND NOW,** this 9th day of March, 2009, upon consideration of Defendants' Motion for Summary Judgment (doc. no. 10), Plaintiff's response in opposition (doc. no. 16) and for the reasons stated in the accompanying Memorandum, it is **ORDERED** that Defendants' motion is **GRANTED**. Judgement is entered in favor of Defendants City of Allentown and Ed Pawlowksi and against Plaintiff Thomas Smith. It is **FURTHER ORDERED** that Defendants' "Motion *in Limine* re: Stephens Testimony" and Defendants' "Motion *in Limine* re: Spang Testimony" are **DISMISSED** as moot. The Clerk of Court is directed to mark this case closed.

                                                        **BY THE COURT:**

                                                        /s/ Mitchell S. Goldberg

                                                        _____
                                                        **MITCHELL S. GOLDBERG, J.**